IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER M., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | No. 23-cv-1943 |
| SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                    **April 30, 2025**
**United States Magistrate Judge**

Christopher McCurley ("Plaintiff") seeks review of the Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security ("SSI") benefits. The parties consented to proceed before a Magistrate Judge[1] and the matter was assigned to me.[2] For the following reasons, I deny Plaintiff's request for review and affirm the Commissioner's decision.

I.    **PROCEDURAL HISTORY**

On November 10, 2021, Plaintiff applied for DIB and SSI benefits under the Social Security Act ("SSA"). R. 57, 69. Plaintiff asserted his disabling condition began around May 27, 2021. R. 58, 70, 82, 94, 193, 200.

The claims were denied initially on April 21, 2022. R. 57, 69. Plaintiff filed for reconsideration on May 2, 2022. R. 121. On July 22, 2022, Plaintiff's claim were denied again.

_____

[1] See Docs. 2 & 6; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] See Doc. 5.

R. 81, 93.  Plaintiff requested a hearing on August 1, 2022.  R. 130.  Due to the COVID-19

pandemic, a telephone hearing took place on November 15, 2022.  R. 37-56. Vocational expert

("VE") David Zak, Plaintiff's counsel Andrew Lapat, and Administrative Law Judge ("ALJ")

Stuart Gauffreau, participated in the hearing.  Id.  At the hearing, Plaintiff amended the alleged

onset date ("AOD") to March 15, 2021.  R. 42.  The ALJ denied benefits.  R. 29.

 Plaintiff filed a request for review of the ALJ's decision, which was denied.  R. 1, 189-

92.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.

R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff then initiated this action in federal court.  Doc.

1.  Plaintiff filed his Brief and Statement of Issues in Support of Request for Review.  Doc. 14.

Defendant filed a Response to Plaintiff's Request for Review.  Doc. 18.  Plaintiff filed a Reply.

Doc. 19.

## II. <u>LEGAL STANDARDS</u>

 To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential

process evaluating:

 1. Whether the claimant is currently engaged in substantial gainful activity;

 2. If not, whether the claimant has a "severe impairment" that significantly
  limits their physical or mental ability to perform basic work activities;

 3. If so, whether based on the medical evidence, the impairment meets or
  equals the criteria of an impairment listed in the listing of impairments

("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform their past work; and

5.      If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant can perform other jobs in the local and national economies, in light of their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) (citation omitted).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted)).  It is a

3

deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing

Schaudeck, 181 F.3d at 431).

## III.    ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Plaintiff met the insured status requirements of the SSA through

December 31, 2026.  R. 17.  The ALJ observed that, while the claimant worked after the AOD,

Plaintiff's work activity did not rise to the level of substantial gainful activity.  R. 17-18.

The ALJ noted that Plaintiff had several severe impairments including lumbar spine

disorder, anxiety, depression, and post-traumatic stress disorder.  R. 18; 20 C.F.R. §§

404.1520(c), 416.920(c).  The ALJ considered and decided that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of

the Listings.  R. 18; see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925,

416.926.  Specifically, the ALJ determined that Plaintiff's impairments did not meet the

requirements of either Listing 1.15 (disorders of the skeletal spine resulting in compromise of a

nerve root(s)) or 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina).  R.

18-19.

Additionally, the ALJ did not find that Plaintiff's mental impairments, singly or in

combination, met or medically equaled Listing 12.04 (depressive, bipolar and related disorders),

12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related

disorders).  R. 20; 20 C.F.R. pt. 404 subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, 416.926.  The ALJ also found Plaintiff's mental

impairments did not satisfy the "paragraph B" criteria[3] as he did not have at least two marked limitations or one extreme limitation.  R. 21.  Rather, the ALJ determined Plaintiff had a moderate limitation in all four areas of mental functioning.  R. 20-21.  The ALJ found that the evidence failed to establish the presence of the "paragraph C" criteria.[4]  R. 21.

Considering the entire record, the ALJ decided that Plaintiff had the RFC to perform sedentary work[5] with certain exceptions.  R. 21.  Plaintiff could occasionally use foot controls and frequently use hand controls.  Id.  Plaintiff could frequently reach, never climb ladders, ropes, or scaffolds, and could perform other postural activities no more than occasionally.  Id.  Plaintiff could be frequently exposed to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibrations.  Id.  Plaintiff was limited to performing routine and repetitive tasks and limited to simple work-related decisions.  Id.  Plaintiff was also limited to frequent interaction with supervisors and occasional interactions with co-workers and the public. Id.

Recounting Plaintiff's testimony regarding his physical and mental impairments, the ALJ stated:

> [Plaintiff] lives alone, but his fiancé comes at least three times per week to help him. He testified that he does not currently drive. He had three back surgeries in 2021. He testified that he cannot work because he spends all of his time either in his bed or his chair. He testified that he cannot handle any confrontation. It is hard to get out

---

[3] The four "paragraph B" criteria rate a claimant's functional limitations.  See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(A)(2)(b).  To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in the four areas of mental functioning.  Id. § 12.00(F)(2).

[4] See 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(G)(2)(b)-(c).

[5] See 20 C.F.R. §§ 404.1567(a), 416.967(a).

of bed due to pain. He testified that his depression has gotten very bad. He testified that he feels despair all the time. He has a spinal cord stimulator, takes medication, and gets shots every three months. He testified that he has trouble controlling his temper and has outbursts.

R. 22. After careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Id.

While Plaintiff had relevant past work, he was unable to perform any of it. R. 27; 20 C.F.R. §§ 404.1565, 416.965. Relying on the testimony of the VE, the ALJ determined that a significant number of jobs existed in the national economy that he could perform including document preparer, addresser, and table worker. R. 28-29. Therefore, the ALJ found that Plaintiff was not disabled. R. 29.

In his request for review, Plaintiff argues the ALJ failed to account for all record evidence when making his RFC determination. Doc. 14, at 1. Plaintiff insists that the ALJ failed to consider treating physician Dr. Syed Ibrahim's opinion and Dr. Amanda Kochan-Dewey's examination report. Doc. 14, at 8. Further, Plaintiff maintains that the ALJ failed to properly consider Plaintiff's significant back pain. Doc. 14, at 2, 12-13.

The Commissioner counters that the ALJ properly found that Plaintiff retained the RFC to perform a range of sedentary work with several restrictions aimed at his credibly established physical and mental limitations. Doc. 18, at 1. Moreover, the Commissioner asserts the ALJ

properly evaluated the opinion evidence and substantial evidence supports the finding that Plaintiff is not disabled.  Doc. 18, at 1-2.

IV.  **FACTUAL BACKGROUND**

    **A.  Non-medical evidence**

Plaintiff was born in 1979 and is therefore classified as a "younger person" under the regulations.  R. 28, 193; 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff did not graduate high school[6] and therefore has a limited education.  R. 28, 43, 2317; 20 C.F.R. §§ 404.1564, 416.964.  After many years as a heating, ventilation, and air conditioning ("HVAC") installer, Plaintiff worked as an Industrial Truck Operator from 2011 through 2021.  R. 27, 67, 79, 91, 103, 220-22, 230, 237.  Plaintiff stopped working in 2021.  R. 17-18, 2131.

Plaintiff lives alone.  R. 22, 43, 247.  His fiancé, neighbors, and family come by to help him with chores.  R. 22, 43, 247, 249.  Plaintiff does not currently drive.  R. 22, 43, 250.

    **B.  Medical evidence**[7]

        **1. Medical Evidence of Physical Impairments**

Plaintiff has a history of chronic back pain without a precipitating event.  R. 24, 817, 854, 863, 868, 924, 1274, 2316.  On March 15, 2021, Dr. Chengyuan Wu, a neurosurgeon and radiologist, discussed with Plaintiff the possibility of a spinal cord stimulation to help manage his pain.  R. 2131-32.  When reviewing the history of Plaintiff's back pain, Dr. Wu noted that his

---

[6] Other parts of the record indicate the highest grade of school Plaintiff completed was twelfth grade.  R. 68, 79, 91, 103.  The ALJ noted the discrepancy, which is not relevant to the issues presented here, in his opinion.  R. 20.

[7] Here, I present only the pertinent medical evidence related to the issues on appeal.

MRI showed only mild degenerative changes and no severe stenosis. R. 2128, 2131. Dr. Wu

explained that a temporary spinal cord stimulator would be implanted on a trial basis for a week-

long period. R. 2132. If Plaintiff experienced significant pain reduction because of the implant,

they would discuss implanting a permanent spinal cord stimulator. Id. Plaintiff agreed to the

procedure, and on April 30, 2021, a temporary spinal cord stimulator was installed. R. 1436-37,

1465, 2132.

On May 10, 2021, and May 21, 2021, Plaintiff reported that he experienced an

approximate 50% reduction in his pain due to the temporary spinal cord stimulator procedure. R.

1625, 1629, 1645, 1647, 1649, 2158. Further, Plaintiff reported that he experienced "significant

improvements in his overall quality of life." R. 2158. Plaintiff noted that he was able to stand

longer, do more chores, and perform his daily routine around the house with significantly fewer

breaks. R. 1623. As a result, Dr. Wu recommended a permanent system be installed. R. 1625,

1629. On May 21, 2021, Plaintiff received a permanent spinal cord stimulator system. R. 1629.

After the permanent installation was performed, Plaintiff reported on July 26, 2021 that

while he experienced some degree of improvement of his chronic pain, he also experienced

significant discomfort around his lumbar incision where the wires were relatively prominent. R.

2185-86. On September 2, 2021, Plaintiff again reported that he continued to experience some

discomfort around his lumbar incision. R. 1803, 1810, 1814. Dr. Wu discussed the option of

removing the prominent hardware and replacing it with a paddle-type epidural electrode. R.

1814. That same day, Dr. Wu performed the corrective surgery. R. 1814-18.

On September 5, 2021, Plaintiff visited Lehigh Valley Hospital Cedar Crest's emergency room complaining of severe back pain.  R. 923-24.  Plaintiff was given prescription medicine to help alleviate his pain.  R. 924.  Plaintiff was discharged on September 8, 2021.  R. 948.

On October 28, 2021, Plaintiff reported that he experienced an approximate 35% improvement in his chronic pain, and overall he was happy with the results of the spinal cord stimulator.  R. 2232.  In spite of this, he continued to have significant lower back pain, and Dr. Wu prescribed Flexeril to address the more severe muscle spasms he was experiencing.  Id.  Dr. Wu discussed the importance of consistent stretching and exercising in terms of improving his range of motion, flexibility, and strength.  Id.

On December 7, 2021, Plaintiff began physical therapy at Good Shepherd Rehabilitation Hospital.  R. 2299.  Plaintiff reported that he experienced constant spinal pain and was unable to perform daily activities.  Id.  Jill Linette, PT, rated him an 86 out of 100 on the Modified Oswestry Disability Scale.  R. 2302.  Linette further noted that Plaintiff had ambulation, balance, endurance, range of motion, and strength deficits as well as muscle weakness and pain that limited his functions.  Id.

On December 16, 2021, Plaintiff saw Shawn Amin, D.O., at Lehigh Valley Physician Group (LVPG) Family Medicine-Southside regarding his back pain.  R. 877-78.  On exam, Plaintiff had normal five out of five strength in all tested muscle groups and intact sensation.  R. 882.  Dr. Amin recommended Plaintiff receive steroid injections to alleviate the pain.  R. 883-84. He underwent a bilateral L3-4 and L4-5 facet injection at that appointment.  Id.

On May 18, 2022, Plaintiff reported to Joshua Krassen, D.O., at LVPG that his pain was occasionally getting so bad that it took his breath away and that marijuana edibles helped alleviate his pain.  R. 1368.  Plaintiff denied experiencing any benefits from muscle relaxants and the injections only provided short term pain relief.  Id.  Dr. Krassen noted that throughout the visit "the patient was persistently drug seeking for pain medications."  R. 1369.  Dr. Krassen refused to prescribe him any narcotics as he "essentially had a normal MRI with no pathology that would warrant narcotics."  Id.  Plaintiff received an injection in his left lumbar paraspinals to alleviate his pain.  Id.

On June 9, 2022, Plaintiff reported to Dr. Wu that the stimulator was no longer providing any pain relief.  R. 2252.  Dr. Wu reprogrammed his stimulator to an amplitude of 0.8 mA over the superior T10 vertebral body.  R. 2252-23.

Two other doctors evaluated Plaintiff's physical impairments for the disability proceedings.  On May 21, 2022, Arcadio Agudelo-Hernandez, MD, completed the medical portion of the initial disability determination.  R. 66.  Dr. Agudelo-Hernandez found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  R. 64.  Dr. Agudelo-Hernandez determined that Plaintiff could stand or walk for a total of two hours with normal breaks or sit for a total of six hours with normal breaks.  Id.  Dr. Agudelo-Hernandez opined that Plaintiff had occasional postural limitations and should avoid concentrated exposure to extreme cold, extreme hot, and hazards.  Id.

On July 21, 2022, state agency consultant Minda Uy-Barreta Bermudez, MD, evaluated Plaintiff for the reconsideration level determination.  R. 88-89.  Dr. Bermudez opined that

10

Plaintiff could stand or walk for a total of four hours with normal breaks.  R. 87.  Further, Dr.

Bermudez opined that Plaintiff had occasional postural limitations and should avoid concentrated

exposure to vibrations and hazards.  Id.

### 2. Medical Evidence of Mental Impairments

Plaintiff received a neuropsychological examination on April 7, 2021, in preparation for

his spinal implant.  R. 2139.  The exam's primary purpose was to "assess for any potential

contraindications to treatment."  Id.  Robert L. Rider, Psy.D., reported Plaintiff was taking

Effexor and Seroquel to manage his mental health conditions.  Id.  Plaintiff was alert and fully

oriented, his insight and judgment were intact, his speech was fluent and normal, and he

participated in the conversation properly.  R. 2140.  Plaintiff easily understood directions, his

thought content appeared linear and logical with no evidence of delusions or obsessions, and his

recent and remote memory were intact.  Id.  Plaintiff's responses in the clinical interview did not

indicate any significant neurocognitive disorder and he reported minimal depressive symptoms.

R. 2141.  Plaintiff showed moderate elevations on scales assessing irritability or hostility and

potential for overutilization of healthcare resources.  Id.

During a psychosocial evaluation at Lehigh Valley Hospital-17th Street on March 3,

2022, Plaintiff reported that his irritability and anger had worsened over the past year.  R. 1238-

39.  He explained that during his anger outbursts he would "throw and destroy things."  R. 1239.

Plaintiff reported difficulty getting along with coworkers in the past and stated that he didn't

"tolerate any disrespect" from his coworkers.  Id.  Plaintiff said he felt depressed and in despair

and described his energy and motivation as "terrible."  Id.  Upon exam, Plaintiff's focus,

memory, and concentration were mildly impaired.  Id.  Plaintiff's insight and judgment were poor.  R. 1242.  However, his thought process was goal directed and his thought content was relevant and coherent.  Id.  Plaintiff was diagnosed with "bipolar affective disorder, mixed, severe."  R. 1247.  The examiner noted that Plaintiff appeared to be under the influence during this examination.  R. 1239.  While the plan was to increase his mood stabilizing medication dosage, Plaintiff became upset with this plan and walked out of the room.  R. 1247-48.  He wanted medication specifically for his anxiety.  R. 1247.  The proposed medication adjustments were not sent to the pharmacy.  R. 1248.

On March 4, 2022, Amanda Kochan-Dewey, Psy.D., conducted a mental status evaluation of Plaintiff.  R. 1221.  Dr. Kochan-Dewey noted that Plaintiff was well-groomed, appropriately dressed, cooperative, had normal posture, appropriate eye contact, and his manner of relating was fair.  R. 1222-23.  Plaintiff's speech was fluent, clear, expressive, and receptive. R. 1223.  Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.  Id.  Dr. Kochan-Dewey observed that Plaintiff's attention and concentration were mildly impaired due to nervousness related to the mental health evaluation.  Id.  Plaintiff could count by 3s to 18.  Id.  He could perform simple calculations, but he was embarrassed and anxious doing serial 7s—although he was working through the calculations.  Id.  Plaintiff's recent and remote memory were mildly impaired, though his insight and judgment were fair.  Id.  Plaintiff could complete his daily living activities including dressing, bathing, making simple foods, cleaning, laundry, and shopping.  Id.

In a medical source statement of ability to do work-related activities (mental) ("MSS") Dr. Kochan-Dewey opined that Plaintiff had moderate impairments in understanding and remembering complex instructions and in making judgments on simple work-related decisions. R. 1225.  Dr. Kochan-Dewey also found that Plaintiff had marked impairments in interacting appropriately with the public, with supervisors, and with co-workers.  R. 1226.  Further, Plaintiff had a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting.  Id.

On June 8, 2022, Karen Plowman, Psy.D., examined Plaintiff during the disability reconsideration level.  R. 85.  Plaintiff had moderate limitations in understanding, remembering, applying information, interacting with others, concentrating, and adapting or managing himself. Id.  Dr. Plowman reviewed Dr. Kochan-Dewey's March 2022 evaluation and several evaluations conducted within the Lehigh Valley Health Network ("LVHN").  Id.  The records indicated that in July 2021, Plaintiff was seen at the emergency room for an overdose.  Id.  During a February 2022 LVHN evaluation, Plaintiff was diagnosed with bipolar disorder.  Id.  During a subsequent March 2022 LVHN evaluation, Plaintiff made inappropriate comments towards the medical professional conducting the evaluation and appeared to be under the influence.  Id.  Ultimately, Dr. Plowman found that, while Plaintiff had difficulty with personal care tasks, task completion, concentrating, and getting along with others, Plaintiff could perform simple repetitive activities on a sustained basis, despite his limitations.  R. 85, 89-90.  Dr. Plowman also found that Plaintiff had some restrictions in social functioning which appeared to be moderate.  R. 90.

Plaintiff had an initial psychiatric evaluation on June 10, 2022, with Dr. Syed Ibrahim, who specializes in psychiatry. R. 2345. Dr. Ibrahim found that Plaintiff had generalized anxiety and suffered from panic attacks. R. 2345, 2347. On examination, Plaintiff's speech was normal; his language was fluent; he was cooperative and had an appropriate attitude; and his attention span and concentration were intact. R. 2352. Plaintiff's recent and remote memory was intact, his fund of knowledge was within normal limits, and his judgment and insight were within normal limits. R. 2352-53. His associations were intact, he was able to complete complex computations, and he denied abnormal or psychotic thoughts. R. 2353. Dr. Ibrahim diagnosed Plaintiff with major depressive disorder, single episode, moderate; generalized anxiety disorder; and post-traumatic stress disorder, chronic. R. 2354. Dr. Ibrahim created a plan to address Plaintiff's mood swings, anger issues, and depression. R. 2366.

On September 12, 2022, Dr. Ibrahim conducted a telehealth appointment with Plaintiff. R. 2379. Plaintiff reported that his mind was constantly racing and complained that he did not sleep well due to these racing thoughts. Id. During this appointment, Plaintiff's speech was normal, but his mood was annoyed and anxious. Id. Plaintiff denied having any suicidal or homicidal ideation plan. Id.

On October 26, 2022, Dr. Ibrahim completed a MSS. R. 2395, 2400. Dr. Ibrahim opined that Plaintiff had a marked functional limitation in his ability to perform daily living activities; a moderate functional limitation in maintaining social functioning; a moderate functional limitation in concentrating, persisting, or pace; and that he experienced four of more repeated episodes of decompensation within a 12-month period, each of which had a duration of at least

14

two weeks.  R. 2397.  Dr. Ibrahim also noted that he had not seen Plaintiff for a period of more

than twelve months, and that his report that Plaintiff experienced four or more repeated episodes

of decompensation within a 12-month period was based on Plaintiff's self-reporting.  Id.  Dr.

Ibrahim opined that Plaintiff had issues with concentration, getting along with others such as

coworkers, and that his pain created a very limited ability to perform tasks.  R. 2399.  Dr.

Ibrahim agreed that Plaintiff's impairments would cause him to be absent from work more than

four days per month.  Id.

## V.    DISCUSSION

### A.  Substantial evidence supports the ALJ's RFC determination that Plaintiff could perform sedentary work.

Plaintiff first argues that the ALJ's RFC determination is wrong as it "completely

ignores" the opinions of Dr. Ibrahim and Dr. Kochan-Dewey.  Doc. 14, at 8.  A plaintiff's RFC is

the most he or she can still do despite his or her limitations.  20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1).  The RFC is based on all the relevant evidence.  20 C.F.R. §§ 404.1545(a)(1)-(3),

416.945(a)(1)-(3).  Ultimately, it is the ALJ's exclusive responsibility to assess a plaintiff's RFC.

20 C.F.R. §§ 404.1546, 416.946.  An ALJ must include in the RFC any credibly established

limitations the record supports.  Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir.

2007).

The ALJ's RFC assessment must be "accompanied by a clear and satisfactory explication

of the basis on which it rests."  Fargnoli v. Halter, 247 F. 3d 34, 41 (3d Cir. 2001) (quoting

Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  The ALJ must evaluate the persuasiveness

of each medical opinion based on five factors.  See 20 C.F.R. §§ 404.1520c(c), 416.920c(c);

<u>Karen J. v. Comm'r of Soc. Sec.</u>, No. 24-cv-2139, 2025 WL 300607, at *9 (E.D. Pa. Jan. 24, 2025) (citation omitted) (stating five factors set forth in 20 C.F.R. § 404.1520c(c) determine persuasiveness). The five factors are: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has a familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." <u>Id.</u> (citing 20 C.F.R. 404.1520c(c)). The only factors that an ALJ *must* discuss when explaining their determinations are supportability and consistency.[8] <u>Id.</u> (emphasis added). The ALJ may not reject any physician's conclusion unless he weighs it against other relevant evidence and explains why certain evidence was accepted and why other evidence was rejected in a way that allows for meaningful judicial review. <u>See William T. v. O'Malley</u>, No. 23-cv-2446, 2024 WL 4906490, at *15-16 (E.D. Pa. Nov. 27, 2024) (citing <u>Balthaser v. Kijakazi</u>, No. 20-cv-06181, 2022 WL 2828848, at *3 (E.D. Pa. July 20, 2022) (citation omitted)).

When assessing an RFC, the ALJ is not required to discuss or refer to every piece of the relevant evidence in the record. <u>Fargnoli</u>, 247 F. 3d at 42. The ALJ's RFC determination will

---

[8] Supportability examines "the extent to which a medical source has articulated support for the medical source's own opinion," whereas consistency examines "the relationship between a medical source's opinion and other evidence within the record." <u>Swain v. Comm'r of Soc. Sec.</u>, No. 23-1132, 2024 WL 4289731, at *1 n.1 (W.D. Pa. Sept. 25, 2024) (quoting <u>Cook v. Comm'r of Soc. Sec.</u>, No. 20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)).

not be set aside provided it is supported by substantial evidence.  Burns v. Barnhart, 312 F.3d

113, 129 (3d Cir. 2002).

> **I.    The ALJ properly considered the opinions of Dr. Ibrahim and Dr. Kochan-Dewey.**

Plaintiff argues that Dr. Ibrahim's and Dr. Kochan-Dewey's medical opinions show the

severity of Plaintiff's depression, panic, mood swings, PTSD, and anxiety.  Doc. 14, at 8.

Plaintiff asserts that Dr. Ibrahim's records show that Plaintiff's mood swings are worse when he

is in pain.  Doc. 14, at 9.  Plaintiff also disagrees with the ALJ's reliance on Dr. Kochan-

Dewey's finding that he was cooperative, with a fair manner of relating and appropriate eye

contact during the consultative exam.  Doc. 14, at 11.

When discussing Dr. Ibrahim, the ALJ stated:

> Claimant's psychiatrist, Syed Ibrahim, M.D., submitted a medical
> source statement in which he opined that claimant had marked
> restriction of activities of daily living, moderate difficulties in
> maintaining social functioning and moderate deficiencies of
> concentration, persistence, or pace, and four or more episodes of
> decompensation within a 12-month period.  He opined that claimant
> was unable to meet competitive standards in the areas of maintaining
> attention for two-hour [segments], accept instructions and respond
> appropriately to criticism from supervisors, get along with co-
> workers or peers without unduly distracting them or exhibiting
> behavioral extremes, and dealing with normal work stress.  He
> opined that claimant had no useful ability to function in the areas of
> working in coordination with or proximity to others without being
> unduly distracted, complete a normal workday and workweek
> without interruptions from psychologically based symptoms,
> perform at a consistent pace without an unreasonable number and
> length of rest periods, interact appropriately with the general public,
> maintain socially appropriate behavior, and use public
> transportation.  He opined that claimant was seriously limited, but
> not precluded in responding appropriately to changes in a routine
> work setting, understand[ing] and remember[ing] detailed

17

instructions, carry[ing] out detailed instructions, and deal[ing] with stress of semiskilled and skilled work. Otherwise, he opined that claimant was unlimited or very good to limited but satisfactory. He opined that claimant would be absent from work more than four days per month as a result of his impairments or treatment and that he could manage benefits in his own best interest. This opinion is only somewhat persuasive, to the extent that I also find that claimant has moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. Dr. Ibrahim acknowledges that he has not treated claimant for more than 12 months, and that his responses regarding functional limitations are based on claimant's own reporting, which is not supported by the objective evidence of record over the entire period at issue. Claimant's presentation at the consultative examination, the April 2021 neuropsychological evaluation, the March 2022 psychological evaluation, and his therapy and medication management records support no more than moderate limitations in the "paragraph B" criteria as set forth at length above.

R. 27 (internal citations omitted).

Here, the ALJ evaluated the supportability and consistency of Dr. Ibrahim's opinion and described why he adopted some but not all the proposed limitations. Id. The ALJ determined that, while Dr. Ibrahim's opinion regarding Plaintiff's moderate limitation in interacting with others was supported by the evidence in the record, Plaintiff's marked limitation of his daily living activities was not sufficiently supported. Id.; see also R. 2397. As to supportability, the ALJ observed that Dr. Ibrahim's opinion was based on Plaintiff's own self-reporting, not his own observations, and Dr. Ibrahim's limited treating history with the Plaintiff. Id. Hence, he found it was less persuasive. See Oduro v. Kijakazi, No. 3:21-cv-00078, 2022 WL 1215076, at *9-10 (M.D. Pa. Apr. 25, 2022) (medical examiner's five-month-long treating relationship with plaintiff was appropriate for ALJ to consider when determining opinion was only partially persuasive because of short treating relationship).

18

When analyzing consistency, the ALJ determined that Dr. Ibrahim's opinion of Plaintiff's social limitations were in line with the 2021 neuropsychological exam during which Plaintiff showed moderate elevations on scales assessing irritability or hostility, a March 2022 psychosocial evaluation visit in which he stated he did not "tolerate any disrespect" from his coworkers, and therapy and medicine management records.  R. 27, 1239, 2141, 2397-98. However, Dr. Ibrahim's opinion that Plaintiff had a marked limitation of his daily living activities was not consistent with Dr. Kochan-Dewey's opinion that Plaintiff was capable completing his activities of daily living.  R. 27, 1223, 2397-98.  Dr. Kochan-Dewey cited Plaintiff's ability to dress, bathe, make simple foods, and clean, do laundry, shop, and drive as reasons for her finding.  R. 1223.  Comparatively, Dr. Ibrahim offered no explanation when he checked the box in his MSS stating only that Plaintiff had a marked limitation of his daily living activities.  See Amspacher v. Kijakazi, No. 22-cv-1821, 2023 WL 7817804, at *8 (M.D. Pa. Oct. 30, 2023) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (stating that form reports in which physician only checks box and gives no other explanation is weak evidence). For these reasons, the ALJ considered and adequately explained why he found parts of Dr. Ibrahim's opinion persuasive and others not persuasive.[9]  R. 27; Burns, 312 F.3d at 129.

Plaintiff also challenges the ALJ's decision regarding Dr. Kochan-Dewey's opinion. When evaluating Dr. Kochan-Dewey's opinion, the ALJ stated:

> Consultative examiner Amanda Kochan-Dewey, Psy.D. opined that claimant had mild limitations in understanding and remembering

---

[9] I note that even though Dr. Ibrahim found that pain exacerbates Plaintiff's anger and depression, Dr. Kochan-Dewey opined that Plaintiff was capable of completing his daily living activities with the exacerbated anger and depression.  R. 26-27, 85, 1223, 2397-98.

and carrying out simple instructions, moderate limitations in making judgments on simple work-related decisions and understanding and remembering complex instructions, and marked limitations in carrying out complex instructions and ability to make judgments on complex work-related decisions. She opined that claimant had marked limitations in interacting appropriately with the public, supervisors, and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. This opinion is somewhat persuasive. It is based on a one-time interaction with the claimant without the benefit of any meaningful record review. While the overall moderate limitations in understanding, remembering, or applying information are consistent with the mental status examination findings and the overall evidence of record, the marked limitations in interacting and responding appropriately are not supported. Claimant was cooperative with fair manner of relating and made appropriate eye contact. Although he has alleged significant limitations in interacting with others, the longitudinal evidence of record supports no more than a moderate limitation as set forth at length above.

R. 26 (internal citations omitted).

Here, the ALJ again sufficiently evaluated the supportability and consistency of Dr. Kochan-Dewey's opinion and described why he adopted some but not all of her proposed limitations. Id. While the ALJ found that Dr. Kochan-Dewey's opinion on Plaintiff's limitations in understanding, remembering, or applying information were sufficiently supported by the record, Plaintiff's marked limitations in interacting with others and responding appropriately were not supported. Id. The ALJ noted that Dr. Kochan-Dewey's opinion was based on a one-time interaction with Plaintiff without the benefit of any meaningful record review. Id.; see Rusak v. Kijakazi, No. 23-CV-00221, 2023 WL 8622995, at *8 (M.D. Pa. Dec. 13, 2023) (affirming ALJ's finding that medical opinion lacked support when opinion was based on "one time, self-reported examination."). Moreover, Dr. Kochan-Dewey's opinion that Plaintiff had

marked limitations in interacting and in responding appropriately conflicted with Dr. Kochan-Dewey's own observation that Plaintiff was cooperative during their session with a fair manner of relating and made appropriate eye contact.  R. 26, 1222-23.  Because of this, the ALJ's rejection of the marked limitation is supported.[10]  See Norris v. Kijakazi, No. 21-cv-2524, 2023 WL 3674308, at *13 (E.D. Pa. May 25, 2023) (affirming ALJ's rejection of medical opinion's "marked limitations in interacting with supervisors" finding because medical opinion itself stated that plaintiff "made appropriate eye contact and spoke normally during her examination.").

Examining consistency, the ALJ found that the moderate limitation in understanding, remembering, or applying information was consistent with longitudinal record evidence, including Dr. Plowman's opinion that Plaintiff had moderate limitations in understanding, remembering, or applying information.  R. 26, 85, 1224-26.  Dr. Kochan-Dewey's finding, however, that Plaintiff had marked limitations in interacting with others was inconsistent with evidence presented in the record, including both Dr. Plowman and Dr. Ibrahim's opinions that Plaintiff only had a moderate limitation in this area.  R. 26-27, 90, 1226, 2397-98.  Dr. Plowman opined that while Plaintiff had some restrictions in social functioning, including interacting appropriately with the general public, responding appropriately to criticism, and getting along

---

[10] Relatedly, Plaintiff's reliance on Gongon to rebut Dr. Kochan-Dewey's observation that Plaintiff was cooperative and related well is misplaced.  Gongon v. Kijakazi, 676 F. Supp. 3d 383 (E.D. Pa. 2023); Doc. 19, at 5–6.  In Gongon, the ALJ pointed to generic observations of plaintiff's mental health such as plaintiff's cooperative behavior, responsiveness, and adequate social skills that had little or no connection to plaintiff's depression related to his pain.  Gongon, 676 F. Supp. 3d at 383.  Here, the ALJ observed Plaintiff's cooperation during the examination with her which is directly related to Plaintiff's ability to interact and respond appropriately to situations.  See, e.g., Norris, 2023 WL 3674308, at *13.

with coworkers, the restrictions all appeared to be moderate based on the treating records and his symptoms. R. 90. Similarly, while Dr. Ibrahim found that Plaintiff's anger made it difficult to get along with others, he opined that Plaintiff only had a moderate limitation in maintaining social functioning. R. 2397-99. Thus, the ALJ adequately explained why he adopted some of Dr. Kochan-Dewey's limitations and rejected other limitations. See Mathews v. Kijakazi, No. 21-1140, 2022 WL 4535087, at *1 n.2 ("The critical issue is whether the ALJ adequately explains and supports her conclusions."). For these reasons, the ALJ's findings regarding Dr. Kochan-Dewey are supported by substantial evidence. See Zirnsak, 777 F.3d at 610.

Accordingly, Plaintiff's first claim fails.

**II. The ALJ properly accounted for the evidence supporting Plaintiff's back pain.**

Plaintiff's second argument is that the ALJ overstated Plaintiff's physical abilities by ignoring evidence of his back pain and spinal implant. Doc. 14, at 12. Plaintiff argues that more weight should have been given to Plaintiff's back pain considering that he chose to undergo elective spinal implant surgery to help alleviate the pain. Doc. 14, at 6. While Plaintiff concedes that the record does not contain opinion evidence addressing the back pain, Plaintiff asserts that the ALJ's reliance on the state medical consultants' opinions was "nonsensical." Doc. 14, at 12-13.

Regarding Plaintiff's physical impairments, the ALJ wrote:

> He presented for a neurosurgery appointment in March 2021 with complaints of chronic back pain. He denied one precipitating event but reported falls, physical altercations, and mild injuries before chronic building of pain. He reported needing to move or reposition after 15 minutes. An MRI of his lumbar spine showed mild

degenerative changes and no significant stenosis. His neurosurgeon discussed trialing a spinal cord stimulator for pain relief.

In April 2021, claimant underwent a percutaneous placement of spinal cord stimulator electrodes for trial. At a follow up appointment on May 10, 2021, claimant reported that he was doing well and had experienced 50% pain relief over the last few days. He reported that he was able to stand longer and was able to do more chores and activities of daily living around the house with significantly less need for interruption to sit or lie down secondary to pain exacerbations. He felt that it would be worthwhile to go forward with permanent implant from a pain relief and quality of life standpoint. On May 2021, he underwent implantation of permanent percutaneous thoracic epidural spinal cord stimulator electrodes. An MRI of claimant's lumbar spine revealed mild spondylosis without severe canal or neural foraminal stenosis.

At a follow up appointment in July 2021, claimant reported that he was getting some degree of improvement of his chronic pain but also reported discomfort around his lumbar incision. He agreed to move forward with surgery to convert his system to a paddle electrode.

Claimant underwent a revision of his spinal cord stimulator on September 3, 2021. On September 5, 2021, claimant presented to the emergency room after calling 911 complaining of severe pain in his thoracic and lumbar spine. On admission, providers were unable to perform much of a neurological examination because he was so uncomfortable and would not participate. Following receipt of pain medication, claimant was examined again and had 5/5 motor strength of the bilateral lower extremities with normal plantar and dorsiflexion to light touch in the saddle region as well as lateral legs and feet and first toe. When he returned to his neurosurgeon on September 16, 2021, claimant reported that his surgical pain was much better and that he felt "a lot better overall." On examination, claimant's incision was healing nicely and was clean, dry, and intact. He demonstrated full strength in the lower extremities bilaterally and demonstrated no focal neurologic deficit.

In October 2021, claimant reported approximately 35% improvement in his chronic pain and reported that he was overall happy with the results of his spinal cord stimulator. However, he noted that he continued to have significant low back pain that

appeared to be related to muscle spasms and was of a mechanical nature. He was advised of the importance of stretching and exercise in terms of improving his range of motion, flexibility, and strength in his low back, core, and upper legs. He was prescribed Flexeril for more severe muscle spasms and referred to physical therapy.

In December 2021, claimant presented for a pain management appointment. On examination, claimant had bilateral paraspinal muscle tenderness, muscle spasm, and diminished lumbar spine range of motion with pain. However, he had 5/5 strength in all tested muscle groups, sensation was within lower limits, and his deep tendon reflexes were equal and symmetrical bilaterally. Straight leg raise was negative bilaterally. He underwent a bilateral L3-4 and L4-5 facet injection.

He presented for a physical medicine and rehabilitation appointment in May 2022. On examination, claimant had left lumbar paraspinal tenderness and pain with end range flexion. He underwent a trigger point injection. Treatment records from this appointment indicate that, throughout the visit, claimant was persistently drug seeking for pain medication. His physician refused to prescribe claimant any narcotics "as he essentially had a normal MRI with no pathology that would warrant narcotics."

Claimant returned to his neurosurgeon in June 2022, at which time he denied any relief from his spinal cord stimulator. He reported that he had tried aqua therapy but had been unable to tolerate it. His stimulation settings were adjusted, and he was directed to return in six weeks. He complained of back pain at a primary care appointment in August 2022. His gabapentin dose was increased, and he was started on diclofenac.

R. 24 (internal citations omitted).

The ALJ also reviewed the determinations of state agency consultants Dr. Agudelo-Hernandez and Dr. Bermudez. R. 25. They both determined that Plaintiff was capable of light work. R. 25-26, 64-66, 81. Accounting for Plaintiff's considerable pain, the ALJ further limited Plaintiff's RFC to sedentary work. R. 25-26. The ALJ stated:

24

> With regard to claimant's spine disorder, [the] objective evidence
> does not corroborate the extent of claimant's subjective complaints
> of pain.  Indeed, an MRI of his lumbar spine was described as
> "essentially normal," and claimant was denied narcotic medication
> at a physical medicine and rehabilitation appointment in May 2022
> because he had "no pathology that would warrant narcotics."

R. 27 (internal citations omitted).

Contrary to Plaintiff's assertion, the ALJ properly considered Plaintiff's abilities and took into account his back pain when determining his RFC.  R. 27, 1369.  The ALJ discussed Plaintiff's history of back pain, including his 2021 elective spinal cord stimulator surgery, at length.  R. 24.  The ALJ considered Plaintiff's history of back pain and alleged severity and chose to give greater weight to the findings of Dr. Krassen—who determined that Plaintiff's subjective complaints of pain presented as drug seeking behavior as his 2022 MRI showed "no pathology that would warrant narcotics."  R. 27, 1368-39.  While Plaintiff argues that the ALJ did not discuss all the relevant evidence of record, including a Good Shepherd Physical Therapy exam, the ALJ is not required to discuss all of the evidence of record.  R. 2299; see Fargnoli, 247 F. 3d at 42.  Further, even though the Good Shepherd Physical Therapy exam may be consistent with more restrictions, pointing to evidence that could be consistent with greater reaching restriction alone is not a basis to disturb an ALJ's well-reasoned decision.  Joshua L. v. Colin, No. 23-cv-4528, 2024 WL 5170747, at *7 (E.D. Pa. Dec. 19, 2024) (citing Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986)) (stating that provided substantial evidence supports ALJ's conclusion, it will not be overruled).  Despite Plaintiff's contention otherwise, the ALJ considered Plaintiff's back pain, and his RFC is supported by substantial evidence.  See Biestek, 587 U.S. at 103.

Finally, Plaintiff argues that the ALJ did not provide "even a single reason" for the reduction of the RFC from light to sedentary. Doc. 14, at 13. Both state agency consultants opined that Plaintiff could complete light work. R. 25, 64-66, 81. Nevertheless, the ALJ considered the evidence presented in the record, and to the benefit of Plaintiff, decided to further limit Plaintiff to sedentary work. R. 25-27. Adopting more restrictive limitations than those proposed by the medical providers is within the ALJ's discretion. See William T., 2024 WL 4906490, at *6 (citing Titterington v. Barnhart, 174 F.App'x 6, 11 (3d Cir. 2006)) (finding that it was well within ALJ's discretion to adopt more restrictive limitations than doctor found). Additionally, any error Plaintiff claims is "harmless" because the ALJ adopted a more restrictive sedentary RFC than the light work RFC the medical providers recommended. See e.g., Titterington, 174 F.App'x at 11 ("There is no legal requirement that a physician have made the particular findings than an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties.").

For these reasons, Plaintiff's second claim also fails.

**VI.    <u>CONCLUSION</u>**

The ALJ properly evaluated Dr. Ibrahim and Dr. Kochan-Dewey's medical opinions when determining Plaintiff's RFC.  Additionally, the ALJ properly accounted for Plaintiff's back pain when formulating the RFC.

Accordingly, Plaintiff's request for review (Doc. 1) is **DENIED**.  An appropriate order accompanies this opinion.

BY THE COURT:

<u>/s/ Craig M. Straw</u>
CRAIG M. STRAW
U.S. Magistrate Judge

27